counsel. Thank you, Your Honor. Good morning, and may it please the Court. My name is Daniel Blank, and I represent Mr. Betancourt Cruz in this case. He's the appellant. Your Honors, the district court's actions in this case deprived my client of two crucial rights, the right to a jury of his peers and the right to present a full and meaningful defense. And together, these two deprivations caused the trial for him to be unfair. Now, a strike of a potential juror for cause requires either actual or implied bias. For actual bias strikes, the district court must make factual findings, and those findings are generally deferred to by this Court. Here, the government has apparently abandoned any claim of implied bias. In any event, implied bias can only support a strike in exceptional circumstances. Moreover, the district court did not make any factual findings with regard to actual bias. So on this basis alone, the Court should reverse the conviction and remand for a new trial. Mr. Blank, given the fact that these sorts of problems arise during voir dire, is it your position that it is – there's simply no flexibility in the case law to look at the transcript of the proceeding, see how the jurors responded to the question, and then essentially find on an abuse of discretion standard that the district court obviously must have determined actual bias based upon what was presented to him during the colloquy? Yes, Your Honor. I think that there is not flexibility to do that for actual bias. I think this Court can do that sort of review for implied bias. Implied bias doesn't require the sorts of factual findings that Your Honor just described. I would reconcile your position with the language in the Supreme Court cases addressing jury selection that remind us that because things happen in the courtroom that don't lend themselves well to a written record, body, gestures, defiance, stares, however you want to describe it, that we have to, in essence, give a higher level of deference to the judgment of the trial court in selecting a fair juror. Indeed, this Court has said so, that you have to give deference. However, what you give deference to is the factual findings. And the Court repeatedly refused in this case to make any factual findings. I requested them. It was denied. Didn't he make an ultimate factual finding? No, Your Honor. He made a conclusion. What he came to was that the conclusion that he came to was that he was biased. I mean, isn't the essence of what he did, he concluded that they were biased. Well, then there would be no difference between implied bias and actual bias. No, that's not the case. What he said was, I am satisfied. But his ruling was based upon their responses to his questions. Well, he didn't say that. He didn't say that. But as Judge Tallman just got through saying, it's reflected in the record. It's clear from what was the colloquy that was taking place. Well, the reason why we defer to district court rulings is just what Your Honor said, is that the district court judge is present. But what the district court judge in this case kept saying is the record is what the record is. He said that two or three times throughout the course of my attempts to get him to make a factual finding and he refused to do so. It's not sufficient. A district court judge has to say, I'm going to find that this person demonstrated actual bias because X. And the judge didn't do it in this case. What if a juror, a prospective juror during voir dire says, on the record, in response to the question, can you be fair and impartial, if I were sitting in the defendant's court and he did not want me or on my jury? Is that sufficient for the district court at that point to conclude that he is actually biased and therefore must be? No, I don't think so. Does he have to say, based upon the answer that Juror Smith gave on voir dire, I find that he is actually biased and could not be a fair and impartial juror? I believe it's the latter. And I think, under the circumstances that Your Honor just described, that would constitute merely what this Court in Fields called hints of bias that would warrant a peremptory challenge. Actual bias requires more. Actual bias requires a finding that a particular belief or opinion will prevent or substantially impair performance of duties. And Mr. Beck, let me give you a real-life hypothetical. I was picking a jury in Billings. And it happened to involve a child pornography. And when I asked the prospective jurors if any of them, because of the nature of the case, would be unable to sit as a juror in this case, a lady raised her hand. And when I brought her back into chambers to ask her what the problem was, she said, well, I think he's guilty. And I said, well, why would you think that? And she said, well, he just looks guilty to me. And if the government charged him, he must have done what they said he did. Now, isn't that evidence of actual bias? Do you still think that the district judge in that case has to make an express finding that based on those answers, I find she is biased? Well, that is actually fairly common, what you're under-described. And I think what normal ---- I looked to the parties, and I said, you know, anybody have any reason why we shouldn't excuse this juror? And of course, everybody said no. In other circumstances, the district judge might explain to the potential juror what the law requires and then ask, will you be able to follow the laws I have instructed you? And if the potential juror says yes, then I think that a strike for cause is not proper. I think that people might have that impression who are not particularly schooled in the law that, you know, where there's smoke, there's fire. But we presume that jurors can follow instructions. And when they say that they can and that they will be fair and will follow the law, then that's ---- I think you're sort of switching the argument now from whether the strike is a proper strike to whether there's a proper finding. Where do you ---- is there a case that you think would require that the answer to Judge Tallman's question be that he could not have just struck that juror but had to make some kind of a finding? I think in this Court, there are two cases. The Gonzales case, which, of course, Your Honor is familiar with, refers to the deference that the Court gives to factual findings. And the Fields case, which is subsequent to Gonzales, actually remanded for an evidentiary hearing because the judge did not make factual findings of actual bias. So I think that you can't have the deference without the finding. And reading Gonzales and Fields together, that would be the rule. Fields v. Woodford? That's the one. That was a ---- was that a habeas case? It is indeed, Your Honor. Well, what case do you have on direct review, like similar to this one, where we've said that the trial court judge needs to make specific findings? Well, Your Honor, that is the most recent case, and that was the one that cited Gonzales for that. So Gonzales is a direct appeal that referred to the deference to factual findings. United States v. Gonzales? That's correct, Your Honor. But it didn't ---- that one, it didn't say the absence of findings is fatal. It's fatal, yeah. That's correct, Your Honor. It does not. You say Fields does? Well, Fields notes that there was no factual finding with respect to actual bias, and so, in fact, remanded for an evidentiary hearing. Now, Judge Pius is correct that that's on a habeas review. Well, yeah, I'm not sure that that's usually stricter, tougher to reverse in habeas than on direct appeal. But aside from that, it might depend on what kind of case. You know, there may be where it's not entirely clear why the judge thought there was bias, and then you might need a finding. And in a case where it is absolutely clear, where the juror says, I'm biased. Well, I think that's correct, Your Honor. And if we go to the facts in this case, although I see I'm running out of time and would like to reserve a little bit if I could. We'll give you a little time for a break. Thank you, Your Honor. Yeah, and on these facts, certainly with respect to the three jurors, Ms. Crabtree, Ms. Wong, and Ms. Hopkins, even if the Court were to do a sort of a de novo review, there's no basis for striking those jurors as being biased. Each of them said that they could be fair. Now, some of them said they could have difficulties, that they noted some sympathies that they have. But this Court has never held that mere sympathy is enough to warrant that type of a strike. The other issue is the failure to take judicial notice of the fact that jurors – I'm sorry, that a court interpreter must be sworn. This was important for a couple reasons in support of my defense of entrapment by estoppel. Of course, the oath is supposed to awaken the conscience, and so this suggests that maybe the interpreter wasn't paying attention. But even more important, experienced interpreters, it's automatic. As soon as they stand up in the Court, they say, my name is Daniel Blank, I'm an interpreter, and I have been sworn. And so the lack of any appearance for the record or notation that they had been sworn strongly suggests that this interpreter may have been inexperienced, as well as not having had their conscience awakened. You could have called witnesses to show that, and you didn't. Instead, you relied on the judicial notice doctrine, which the Court has the discretion, as it does with any proffered evidence, to admit or not. Well, Rule 201 says the judicial notice is mandatory if requested by the party, and it's proper. So it's not discretionary, it's mandatory. That's not answering my question, Mr. Blank. You could have called witnesses, but you didn't, right? I could have called, but it would be very unusual to call an expert witness, say, to testify what the law requires. No, you could have called the court report, or you could have called the interpreter. Well, the interpreter – actually, there was no record of the interpreter in the file. You had no idea who the interpreter was? I didn't know who the interpreter was. Nobody knew who the interpreter was? Well, I expect – that's correct. The judge in that courtroom. That's correct. And even the courtroom that I was in before Judge Breyer got the file from Judge Fogel, and it wasn't denoted. Now, and the government certainly could have called the court interpreter and found them. I doubt – Is there a court interpreter's office that keeps track of which interpreters are in which courtrooms? Almost certainly. But it would have been unlikely that an interpreter would have remembered exactly what had happened that particular day. It had been years before. So I'm not sure that that would have been so useful. But the interpreter could have testified to what the common practice was in Judge Fogel's courtroom, and then the jury could have decided how much weight to give to the veracity of that testimony. That's correct, for the practice. But what I – I asked, actually, the judge to take notice of the requirement in the rule. And no one is better positioned to say what the rules require in Federal court than the district judge that I was before. Thank you, Your Honor. May it please the Court. My name is Chris Dusko. I'm an assistant United States attorney with the Northern District of California. And I represent the United States. Let me begin where defense counsel left out with respect to the interpreter. We do know who the interpreter was. Her name was Guadalupe Arce. We know that because Judge Breyer's court clerk called the San Jose District Court and found out the name and provided a defense counsel on the record. That's at page 95 of the excerpts of record. So the interpreter was identified for defense and could have been called. But more importantly, the district court did not abuse its discretion in refusing to take judicial notice of what the defense characterized as a requirement that the interpreter state on the record that they have been sworn. Under Rule 201, in order for the district court to take judicial notice, the defense must do two things. First, it must supply the court with the necessary information. And second, it must establish that that information is not subject to reasonable dispute. Now, here you're not taking the position that a judge can't look at the language of a rule and take judicial notice of what the language says, are you? No, I'm not taking that position. I think what's important to note here is that what the defense is asking the court to take judicial notice of is not of a rule, but of a supposed practice of interpreters to state on the record that they have been sworn. Well, I assume where Mr. Blank was going was that once the court agreed that it would take notice of the rule, he would then ask for an instruction based upon the language of the rule and then argue that there was no evidence that the rule was complied with and, therefore, the jury should conclude that the interpreter had not been sworn or that there was some irregularity in the translation. In order for the defense to make that argument, they would have to establish that there was an interpreter on the record. And this was the important point that the defense wanted the court to take notice of, was that the swearing had to be on the record or, as it stated now in the appeal, what the defense now asks is that the district court take notice that the interpreter was required to state on the record that he or she had been sworn. That's what's important to the defense because their entire theory of relevance depends on the idea that the swearing is on the record. And what the defense tells this Court and what it told the district court was that it wanted to argue that the absence of an oath on the record was significant and allowed them to then argue that perhaps that the interpreter wasn't sworn and, therefore, may have gotten the interpretation wrong. Now, to make that point, the defense had to give the court a rule or at least a practice that there's a requirement that interpreters be sworn on the record or, as it's now given to this Court, that the interpreter has to state on the record they've been sworn. The defense didn't do that. At the time of the hearing, the defense didn't cite any rule in front of the district court. Now it cites Rule 604 of the Federal Rules of Evidence, but that rule does not require the giving of an oath on the record. And I can tell the court that in the Northern District of California in San Francisco, the oath is not given on the record. It's given typically in magistrate court at the time of the initial appearance by the clerk of that court before the calendar is called. That's typically how it's done. And it's a hotly disputed issue as to whether or not there's a practice of giving the oath on the record. And the district court, and that's what the district court focused on, is the district court noted that different judges do it differently. The district court wasn't going to take judicial notice of a practice that wasn't established. As I recall in the Central District, our court reporter or court interpreters had their oaths on file at the clerk's office. That may be so. Practice. Right. I think there are different – I can say confidently that there are different practices with respect to the oath requirement, and that practice may vary from courtroom to courtroom and may vary by court reporter – by interpreter to interpreter. Some interpreters do stand up and say – Well, why don't you get on to the other issue, because you've used almost half your time on this one. Yes, Your Honor. The district court properly struck the five jurors for cause because they were equivocal at best about whether they could put aside their sympathies when deciding whether defendants – The government didn't ask the judge to strike them, if I remember correctly. No, Your Honor. The court struck the jurors on its own motion, but then did ask the government its position, and the government indicated that it would have moved to strike those same jurors for cause. It's a fair point, but if you read this Court's decision in United States v. Gonzalez, that decision suggests to district courts that they better strike jurors for cause who answer questions unequivocally, because if they fail to do so, it's a reversible error. In that case – It couldn't be a reversible error, really, if they were pro-defense rather than pro-prosecution. No, it couldn't, but the for-cause standard and the application of that standard should apply evenly to the defense and the government. And the message that the holding of Gonzalez suggests to me that district courts need to be very wary of jurors who give equivocal answers. In that case, the – You know, I would think that a juror who has problems with doing some things may be a more thoughtful juror than one who doesn't. Some people don't do things easily. And, you know, it's not the easiest thing to convict somebody and send them to jail. Well, that's at least your say. To send them away from his family may be difficult for someone to do if he's got a conscience, if he's – but that doesn't mean you won't do it. I mean, most of us say we're going to follow the law. It's not easy. I can tell you it's not easy sometimes for us to decide cases that we're bound to do where we think it's an unfair rule. But we do it because we follow the law, even though it's difficult. So, you know, you sort of respect somebody who does that. Why should somebody be disqualified for saying I'm going to do it even though it's difficult? These jurors, each of them, do not say I'm going to do it even though it's difficult. When asked whether or not they could put aside their sympathies for this defendant either because he's from Mexico or because the facts would show he returns to the United States, they said that they would have difficulty doing that. And the district court properly interpreted that answer as being – as indicating they would have – Kennedy said, well, it's difficult, but will you do it? Isn't that the next question? If I could – it is the next question, Your Honor. And both – all of them said that they would have difficulty. They said that they – some of them said their sympathies may play a role and that – but that it would be difficult for them to put aside their sympathies. So the issue, if I'm – That doesn't answer the question. Now, if it's difficult, you know, and you're a prosecutor, you might well want to challenge that person. But for cause, for a judge to do it when it's difficult and they haven't said I won't do it, but if they say it's difficult and I don't know whether I can do it, maybe. If they say it's difficult but I can do it, certainly not. But don't – isn't that what you have to find out, whether they'll do it before you can strike for cause? This district court made that determination. He listened to the answers. When he heard the answers of the jurors, and we don't have enough time to go through the record, but the record is quite telling, the judge found, and I dispute what the defense says, the judge did make a finding that these – these are jurors who could not put aside their sympathies. Well, that's what it – what it's based on is the question. Did he base it on their saying that, that they couldn't put it aside, or that they would just – he'd just get to the stage where they said it would be difficult without finding out whether they could do it? That's the question I'm trying to determine. Right. The way it – the way it played out, Your Honor, and I'm trying to answer your question as directly as possible, is that they were asked generally, can you be fair, can you follow the law? They said yes. And the district court said, well, that's not very – you know, that's not very helpful. Like in this case, like other cases, you need to know what the law and the facts are. So he then described what the law is in this case and what the facts are. And once they were confronted with the law and the facts of the case, these jurors said that they would have difficulty. Some were – said it would be very difficult for them to put aside their sympathies and follow the law. And that's all he said that was said, that they said it would be difficult, but they did not – were not asked whether they could do it or not do it. They were only asked whether it would be difficult. Your Honor, let me – that's – their statements were it would be difficult, and on this record and given what the district court observed, that was enough for this district court to decide that these jurors were giving at the very best equivocal answers about their ability to be impartial. And given – and once they give equivocal answers, that's enough to strike for cause. Let me cite to you, Your Honor, the facts of Gonzales. There the juror, the potential juror was asked, can you be fair and impartial? The juror said, I'll try. I'll try. Now, of course, the government argued that's not – in that case, the government argued that that's not an unequivocal – that's a unequivocal answer, that they will be fair and impartial. This Court, Your Honor, writing for the majority, held no. I'll try is equivocal. And in footnote 5, you explained why. You said, if a parent asks a teenager whether he will be back before curfew, that parent is highly unlikely to find, I'll try, an adequate satisfactory or unequivocal answer. I would suggest, Your Honor, that the same is true in this case. The parent should say, that's not a satisfactory answer. Right. And if you ask the same – They won't do more than I'll try.  And if you ask the same – They're not going anywhere. Correct. And if you ask the same – if you ask that question to a teenager and they say, it will be difficult for me to be back by curfew – Then you get to the next question. Okay. I'm sorry it's going to be difficult for you, but are you going to do it? And that's the same – And if it says no, then – Well, but the teenager will say, Dad, I'll try. In this case, the jurors are saying, it will be difficult. It's the same unequivocal answer. No, I understand there's a – it's a – I do think it's important, Your Honor, to note that this is an abuse of discretion standard, and that is there for a reason. One of these jurors, for example, when asked whether they could put aside their sympathies to the defendant because he was returning to see his children, broke out in tears when – That was Juror 1. Juror 1 broke out in tears when she was responding. That's only on the record because the district court noted that when it was making its findings of striking the jurors for cause, normally that wouldn't be on the record. Some of these questions were asked, give me a show of hands who could – whether or not they could put aside their sympathies. You don't see the show of hands on the record. So what you're dealing with is a voir dire process where body language and emotional responses and the way the questions are answered are as important as the black and white words that are spoken. Unless the Court has any other questions on these issues, I would submit. Thank you. Thank you. Just two quick points if I may, Your Honors. I just want to thank my colleague for correcting the record with respect to the name of the interpreter that actually was eventually provided in the middle of the trial. The initial problem was that it didn't appear. So I thank my colleague for that and I apologize to the Court. The issue here with respect to the strikes is that the – and I think it's telling is that the district court said to the prosecutor, if you don't want me to strike these people, I won't. And I think that what that shows is that the Court was really acting as a sort of a super prosecutor. He's doubled the government's peremptory strikes. Either someone's biased and they can't serve or not. And to say that, you know, I'll defer to the government. These are people that you would have struck, right? Let me know if not. I think that really is telling that what was going on. He's doing that, is he not? I'm looking at the excerpts of record D4849 and I don't know which of the three jurors it deals with. But he – after the fairness question, he drills down and says – he asks, would you have a problem sitting as a juror in the case knowing that it involves an individual, you know, who's come back to the United States from Mexico? And the juror says, yes, I would have a problem. I mean, how much more does the judge have to do at that point? Well, I think what the judge has to say is then you have this problem. Is this something that you can overcome? If you understand what you're supposed to do, I understand that it's problematical. The same juror has already told the judge in the earlier question that the juror has trouble with the law once you're deported, that you have to get permission to come back, and that people – she feels strongly, he or she feels strongly that people who are from Mexico and are coming here to work are basically, you know, being treated harshly by the immigration law. I think you're – I think you're referring to either Ms. Silver or Ms. Del Rio. I can't tell from the portrait of her. I think the issue is closer with those two. Her statements are a little stronger. I think they are. I think the other three, I think it's a much stronger case for me that the strikes were improper. She was wrong sort of, you know, with a reference that she started to – she displayed some rather demonstrative emotion. Well, I think emotion is not forbidden. I think that, you know, we take jurors and we want jurors to be their complete human being, and it's – you know, it can be upsetting to hear what happened to defendants or what happened to victims in courtrooms. That's – they're not supposed to divorce themselves from that, but they are supposed to follow the law. And the court – For the prosecutor, I would suspect you would strike her under the peremptory at the least. In a New York minute. But that's not the issue. Peremptory strikes are not what we're talking about. We're talking about procurement strikes, and the court basically doubled the government's peremptories. One question. Yes, Your Honor. Assuming one or two, maybe three, maybe your answer is different, in a noncapital case, how do you get to the sufficient prejudice? Well, right. In a noncapital case, then we look to Padilla. In this case, Padilla, that was the marijuana, where the court found error for striking just two potential jurors who believed that the marijuana laws were wrong. But there was no – that error was found to be harmless. But what this court in Padilla cited to was Salamone, which is out of the Third Circuit, saying that where there's a group of people, that that is sufficient to show prejudice, and that won't be harmless error. So somewhere – in Salamone, it was one actual juror, five alternate jurors were – potential alternate jurors were struck. So somewhere between two and one plus five would be that group number. Here we have between three and five, and I think we're getting closer to that point where it would be a wholesale sort of group. You know, the judge said, would anyone be sympathetic to someone coming back? Well, of course they're going to be sympathetic. If there were 15 people who raised their hands, that would be one thing. It also created a real cloud in the courtroom that obviously doesn't come through on the cold record with the remaining potential jurors. But that problem exists every time you voir dire a courtroom full of the denier men, doesn't it? I mean, the alternative is to voir dire individually in chambers. Well, of course that's not required. But in this case, it really, I think, was the strong message to the remaining potential jurors, look, you know, you better not have any sympathy for this guy whatsoever. And as a result, in combination with the fact that I couldn't present my full defense. Well, the jurors are going to be given the instruction that you have to base your verdict on the facts and the law. I mean, we do tell them that you have to put aside your sympathies, don't we? That's correct. But I think this is with an extra oomph by the way it was struck. They were struck by the district court. Thank you, Your Honor, for taking the time. I appreciate it. Thank you. The case, it's argued, will be submitted.
judges: Reinhardt, Paez, Tallman